UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WINIFRED MACHEDA and
RICHARD MACHEDA,

                          Plaintiffs,

v.                                              1:04 -CV-0325
                                                (GTS/GJD)
HOUSEHOLD FINANCE REALTY
CORPORATION OF NEW YORK,

                          Defendant.
_____

APPEARANCES:                          OF COUNSEL:

OFFICE OF RONALD L. VAN NORSTRAND      RONALD L. VAN NORSTRAND, ESQ.
   Counsel for Plaintiff
201 East Jefferson Street
Syracuse, NY 13202

PHILLIPS LYTLE LLP                     PRESTON L. ZARLOCK, ESQ.
   Counsel for Defendants              WILLIAM H. BAAKI, ESEQ.
3400 HSBC Center
Buffalo, NY 14203-2887

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

## I.      INTRODUCTION

        Plaintiff commenced this action on March 24, 2004, pursuant to the Truth in Lending Act

("TILA"), 15 U.S.C. § 1601 *et seq*, the Home Ownership and Equity Protection Act of 1994

("HOEPA"), 15 U.S.C. § 1602 (aa) and 1639, and the New York General Business Law § 349

and 3 N.Y.C.R.R. Part 41.  (*See* Dkt. No. 1, ¶ 1 [Plf.'s Compl.] )

        In their Amended Complaint, Plaintiffs allege as follows.  On March 27, 2001, Plaintiffs

and Defendant, through an account executive, entered into a loan agreement under which

Defendant agreed to lend Plaintiffs a sum of $139,538.04 to be paid over 360 months, with a disclosed annual percentage rate of 10.926%.[1]  (*See* Dkt. No. 8, Part 1, ¶¶ 15, 16, 18 [Plf.'s Am. Compl.].)  Plaintiffs allege that Defendant violated the TILA in the following two ways: (1) failing to provide Plaintiff with a notice of their Right to Cancel the mortgage loan at the proper time or in the proper manner; and (2) misdating the expiration of the Notice of right to cancel provided to Plaintiffs.  Plaintiffs also allege that Defendant violated HOEPA in the following three ways: (1) failing to provide the statutorily required pre-loan disclosures 3 days prior to execution of the agreement; (2) making a loan to Plaintiffs based on the value of their home, and not on their ability to repay; and (3) engaging in a pattern or practice of extending mortgages to consumers based on the consumer's collateral without regard to the consumer's repayment ability.  (*Id.* at ¶¶ 46-62.)  Finally, Plaintiffs allege that TILA affords them the right to rescind their loan agreement with Defendant until up to three (3) years after the loan's consummation, and statutory damages.  (*Id.* at ¶ 41.)  They allege that HOEPA mandates that Defendant relinquish its security interest in Plaintiffs' property within twenty (20) days of receiving notice of Plaintiffs' rescission, and that failure to do so entitles them to additional damages.  (*Id.* at ¶ 44.)

Currently before the Court are Plaintiffs' three motions *in limine* and Defendant's three motions *in limine*.  In their three motions, Plaintiffs request that the Court issue an Order that precludes Defendant from introducing at trial any discussion, argument, testimony and/or

---

[1]      Plaintiffs received $2227.39 in cash, $11,756.30 was allotted for settlement charges, and the remaining $125,654.95 was used to consolidate two existing mortgages ($62,829 and $49,310.47) and pay for Credit Life and Disability Insurance ($13,515.45). (*See* Dkt. No. 88 [Pretrial Stipulation] at ¶ 15-17.)

evidence regarding (1) the $20,122.39 Defendant paid to Robert Riedl two years after the loan transaction, (2) Defendant's contention that it made an error on its forms regarding payment to Information and Real Estate Services, LLC ("IRES") for title fees, and (3) Plaintiffs' tax forms and the contention that Plaintiffs secured their loan from Defendant for primarily business purposes.  (Dkt. No. 82.)  In its three motions, Defendant requests that the Court issue an Order that (1) denies Plaintiffs' demand for a jury trial, (2) precludes Plaintiffs from denying that they did not owe Robert Ridel the second payment amount of $20,122.39, which Defendant paid Robert Riedl subsequent to making the March 27, 2001 loan to Plaintiffs, and (3) precludes Plaintiffs from raising claims of representations contrary to the terms of the loan documents given the parol evidence rule.  (Dkt. No. 91.)

For the reasons set forth below, the Court denies Plaintiffs' three motions *in limine* and grants in part and denies in part Defendant's three motions *in limine*.

## II.     DISCUSSION

### A.      Plaintiffs' Motions *in Limine*

#### 1.      Whether Defendant Should Be Precluded from Introducing Evidence of the $20,122.39 Defendant Paid to Robert Riedl Two Years After the Loan Transaction

In their first motion *in limine*, Plaintiffs argue that Defendant should be precluded from making any mention of the $20,122.39 sum that Defendant paid to Robert Riedl to assure their priority interest on Plaintiffs' home.  (Dkt. No. 82, at 2.)  Plaintiffs argue that the amount was paid by Defendant "on its own accord and solely to assure that it would have the first lien on the Plaintiffs' home."  (Dkt. No. 82, at 2.)  Plaintiffs further argue that, because the amount was paid two years after the loan transaction, it is not part of the loan transaction, has "absolutely nothing

3

to do with [the loan transaction]," and is therefore irrelevant to the issue of rescission.  (*Id*. at 3.)
Finally, Plaintiffs argue that, because the sum should not be included in the "total loan amount"
calculation, it is not permissible to introduce evidence of Defendant paying this amount to Mr.
Riedl.  (*Id*.)

In response, Defendant argues that "the uncontroverted $20,122.39 payment Defendant
made to Mr. Riedl in order to satisfy plaintiffs' indebtedness is entirely relevant."  (Dkt. No. 100,
at 7.)  Defendant argues that Plaintiffs are attempting to eliminate an issue that they themselves
created (by demanding that Defendant pay the amount in question), and that they introduced in
their Amended Complaint.  (*Id*.)  Defendants further argue that the issue is relevant to (1) the
calculation of the "total loan amount" of the loan (for purposes of calculating the interest
actually charged on that loan), and (2) the restitution Plaintiffs must make to Defendant if
rescission were granted.  (*Id*. at 7-8.)

Under the Federal Rules of Evidence, "[a]ll relevant evidence is admissible, except as
otherwise provided by . . . these rules . . . ." Fed. R. Evid. 402.  "Evidence which is not relevant
is not admissible."  Fed. R. Evid. 402.  "'Relevant evidence' means evidence having any
tendency to make the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.
"Although relevant, evidence may be excluded if its probative value is substantially outweighed
by the danger of  unfair prejudice, confusion of the issues or misleading the jury, or by
considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
Fed. R. Evid. 403.

In their Amended Complaint, Plaintiffs allege that they are entitled to a rescission of the

loan agreement because Defendant violated § 1635 of TILA. (*See* Dkt. No. 8, Part 1, ¶¶ 46-62 [Plf.'s Am. Compl.].)  "When a borrower rescinds a loan, he or she must return the money borrowed."  *In re Porter*, 961 F.2d 1066, 1077 (3rd Cir.1992); *see also Valentine v. Influential Sav. & Loan Ass'n*, 572 F. Supp. 36, 40-41 (E.D. Pa.1983) (noting that TILA rescission "is an equitable remedy and the court may condition it upon the borrower's return of the monies advanced by the lender")[2]  Consequentially, the $20,122.39 payment by Defendant may be relevant to the amount of money that Plaintiffs must return to Defendants.  In addition, the Court finds that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.

Moreover, the $20,122.39 payment by Defendant may be relevant to the calculation of the "total loan amount" of the loan made to Plaintiffs (for purposes of calculating the interest actually charged on that loan).  As Plaintiffs' themselves point out, when they entered into the loan agreement with Defendant on March 27, 2001, one of the documents they signed stated that they "granted a 1st position lien to [Defendant] on [their] real property . . . located at [Plaintiffs' current home address]."  (Dkt. No. 45, Part 15, at 14 [Exh. H to Zarlock Affid., in Support of Def.'s Motion for Summ. Judg.].)  Moreover, Plaintiffs' Amended Complaint alleges that, contrary to their understanding on March 27, 2001, the loan made by Defendant to Plaintiffs at that time did not in fact pay off their total indebtedness to Mr. Riedl (implying that there was some other amount owed to Mr. Riedl at the time).  (Dkt. No. 8, Part 1, ¶ 19 [Plf.'s Am.

---

[2]        Similarly, rescission may be conditioned on borrowers return of reasonable value of the property received, *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980), and certainly money encompasses property.

Compl.].)[3]  At least an argument exists, then, that the $20,122.39 amount that Defendant paid

Mr. Riedl was part of the "total loan amount" in that it was necessary for Defendant to secure the

first priority lien that Plaintiffs promised to provide Defendant.  In addition, the Court finds that

the probative value of such evidence is not substantially outweighed by the danger of unfair

prejudice, confusion of the issues or misleading the jury.

As a result, the Court denies Plaintiffs' motion.

> **2.      Whether Defendant Should Be Precluded from Introducing Evidence that It Made an Error on Its Forms Regarding Payment to IRES for Title Fees**

In their second motion *in limine*, Plaintiffs argue that Defendant should be precluded

from introducing any evidence that it made an error on the forms it asked Plaintiffs to sign

during the March 27, 2001, loan transaction authorizing Defendant's payment to its affiliate

company Integrated Real Estate Solutions ("IRES") for performing the title fees.  (Dkt. No. 82,

at 4.)[4]  Plaintiffs argue that such evidence is inadmissible under Federal Rule of Evidence 403.

(Dkt. No. 82, at 8.)  In support of their position, Plaintiffs argue that "[t]he Truth in Lending Act

---

[3]      It should be noted that, when Plaintiffs entered into the loan agreement with Defendant on March 27, 2001, one of the documents they signed stated that they "granted a 1st position lien to [Defendant] on [their] real property . . . located at [Plaintiffs' current home address]."  (Dkt. No. 45, Part 15, at 14 [Exh. H to Zarlock Affid., in Support of Def.'s Motion for Summ. Judg.].)

[4]      The Court notes, as Chief Judge Norman A. Mordue did in his Memorandum Decision and Order of June 26, 2008, that, based on the current record, there appears to be conflicting evidence as to whether Defendant rendered payment to perform the title services to IRES, an entity that Defendant acknowledges to be an affiliate, or Integrated Real Estate Processing, LP ("IREP").  *Macheda v. Household Fin. Realty Corp. of New York*, 04-CV-0325, 2008 WL 2562003, at *5-7 (N.D.N.Y. June 26, 2008) (Mordue, C.J.).  (*See* Dkt. No. 61, at 10-13.)  Defendant argues that IREP was paid to perform the services, and it is not an affiliate. Defendant further argus that the forms that indicate that IRES was paid contain a typographical error.

provides two (2) separate defenses that a creditor may assert with respect to an error it may have committed[,]" but "[t]he Defendant may not avail itself of either of the error defenses in this matter."[5]  (Dkt. No. 82, at 4-5.)  Plaintiffs argue that "[t]he correction of error defense is not available to the Defendant since it failed to timely assert such defense[,] and [t]he Defendant may not avail itself of the bona fide error defense because it has not properly plead such a defense."  (*Id*.)

In response, Defendant asserts three arguments: (1) Plaintiffs' argument is barred by the law-of-the-case doctrine; (2) the two §1640 defenses pertain only to claims involving failure to disclose; and (3) because Plaintiffs' Amended Complaint includes allegations as to points and fees paid, in which Plaintiffs allege that TILA and HOEPA govern their loan agreement, Defendant must be permitted to present evidence to the contrary.  (Dkt. No. 100, at 10-12.)

As an initial matter, Plaintiff has not persuaded the Court that, even if Defendant is limited by the two defenses listed in §1640 TILA, Defendant's typographical error argument does not fall within the category of the statutorily authorized *bona fide* errors defense.  *See* 15 U.S.C. § 1640(c) (noting that examples of a bona fide error include a clerical error).

In any event, the Court finds that another reason exists to permit this evidence, under the circumstances.  In order to qualify for HOEPA protection, "the total points and fees payable by the consumer at or before closing [must] exceed . . . 8 percent of the total loan amount." 15

---

[5]        In the event of an improper disclosure, 15 U.S.C. § 1640(b) provides for a *correction of errors* defense that a creditor may assert.  In addition, 15 U.S.C. § 1640(c) provides for a *bona fide errors* defense, which allows a creditor to avoid liability under 15 U.S.C. § 1635 or 15 U.S.C. § 1640 "if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1640(c).

U.S.C. § 1602(aa)(1)(B)(i).  The term "points and fees" under HOEPA includes "fees for title examination, abstract of title, [and] title insurance" unless "the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor . . . ." 12 C.F.R. 226.4(c)(7); 226.32(b)(1)(iii).[6]  Plaintiffs have the burden of "establish[ing] that the admitted points and fees represent 8% of the loan amount." *In re Merriam*, 333 B.R. 22, 29 (Bankr. W.D.N.Y. 2005); *see also In re Strong*, 356 B.R. 121, 161-64 (Bankr. E.D. Pa. 2004) (indicating that a defendant may introduce evidence that rebuts plaintiff's assertion that the points and fees add up to exceed the eight percent threshold). Simply stated, Defendant should not, and will not, be precluded from offering evidence contradicting the evidence Plaintiff may offer in order to meet their burden of proof.[7]

As a result, the Court denies Plaintiffs' motion.

### 3.   Whether Evidence of Plaintiffs' Tax Forms and the Contention that Plaintiffs Secured Their Loan from Defendant Primarily for Business Purposes Should Be Precluded

Plaintiffs argue that Plaintiffs' tax records are "inadmissible for the purpose of supporting the Defendant's contention that the [March 27, 2001] loan was secured for a business purpose." (Dkt. No. 82, at 10.)  In support of their position, Plaintiffs argue that "[i]t is immaterial and unnecessary to the disposition of this case and contrary to law to permit such evidence or

---

[6]     The regulation defines "affiliate" as "any company that controls, is controlled by, or is under common control with another company[.]" 12 C.F.R. §226.32(b)(1)(iv) (citing 12 U.S.C. § 1841(k)).

[7]     The Court notes that, if it is found that IRES was paid to perform the title services, the $905 fee for title services should be included in the calculation of "total points and fees."  Conversely, if it is found that IREP was paid to perform the title services, and it is also found that IREP is not an affiliate of Defendant, the $905 fee should not be included in the calculation of "total points and fees."

8

inference [that Plaintiffs secured their loan primarily for business purposes] and would be highly prejudicial to the Plaintiffs in the minds of the jury as well as confusing and misleading to the jury." (Dkt. No. 82, at 9.)  Plaintiffs further argue that the tax form is confusing because line 3, which indicates the deductions Plaintiffs took in their taxes for operating a daycare center out of their home, reflects that 52.13% of their home was used exclusively for their daycare.  (*Id.*)  However, argue Plaintiffs, "since the area of the home[ ] used for daycare is also used for the Plaintiffs personal, family and household use, . . . [t]he accurate percentage of the dwellings use for the daycare is reflected in line 7, not in line 3."  (*Id.*)[8]

In response, Defendant argues that, because TILA places on Plaintiffs the burden of demonstrating that a disputed transaction is a consumer credit transaction and not a business transaction, Defendant should not be precluded from offering evidence that disputes whatever evidence Plaintiffs offer in support of their position that the loan was for a non-business purpose. (Dkt. No. 100, at 13.)  According to Defendant, "[w]hile Plaintiffs are entitled to try to explain away or minimize their business use of the Property, Defendant is entitled to fully explore it before the trier of fact."  (*Id.*)

"[E]xtensions of credit primarily for business, commercial, or agricultural purposes" are exempted from the scope of TILA.  15 U.S.C. § 1603(1); Reg. Z §226.3(a)(I), Official Staff Commentary § 226.3(a)-l.[9]  When there is a dispute between parties as to the type of transaction,

---

[8]    According to Plaintiffs, "[f]or 1998 that percentage was 16.65%, for 1999 the percentage was 7.10% and for 2000 the percentage was 16.97%."  (Dkt. No. 82, at 9.)

[9]    The term "primarily" creates a factual issue. *See Searles v. Clarion Mortg. Co.*, 87-CV-3495, 1987 WL 61932, at *3 (E.D. Pa. Dec. 07, 1987); *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 704 n.11 (9th Cir. 1986) (finding that loan proceeds were primarily for personal use was not clearly erroneous where primary purpose of the loan was to

"[t]he plaintiff has the burden of showing that the disputed transaction was 'a consumer credit transaction, not a business transaction.'" *Searles v. Clarion Mortg. Co.*, 87-CV-3495, 1987 WL 61932, at *3 (E.D. Pa. Dec. 7, 1987) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 751 [3d Cir.], *cert. denied*, 419 U.S. 885 [1974]); *Quinn v. A.I. Credit Corp.*, 615 F. Supp. 151, 153 (E.D. Pa.1985). "In making the determination of whether a transaction was primarily consumer or commercial in nature, the court must examine the transaction as a whole and the purpose for which the credit was extended." *Searles v. Clarion Mortg. Co.*, 1987 WL 61932, at *3 (citing *Tower v. Moss*, 625 F.2d 1161, 1166 [5th Cir. 1980]); *Gallegos v. Stokes*, 593 F.2d 373, 375 (10th Cir. 1979); *Quinn*, 615 F. Supp. at 154; *Bokros v. Assoc. Fin., Inc.*, 607 F. Supp. 869, 871 (N.D.Ill. 1984); *Thorns v. Sundance Properties*, 562 F. Supp. 882, 883 (D. Nev.1983). "The nature of the credit transaction is ultimately determined by the entire surrounding factual circumstances." *Id.* (citing *Tower*, supra, 625 F.2d at 1166 n.4).

Under the circumstances, the Court finds that there is a factual dispute as to the nature of the transaction at issue.[10]  Clearly, some percentage of Plaintiffs' house was used as a daycare center.  The exact percentage, however, is a question of fact for the jury.[11]  Simply stated, again,

---

pay off a prior one-year house loan and the proceeds intended for business use constituted only ten percent of the loan); *Smith v. Russellville Production Credit Ass'n*, 777 F.2d 1544, 1549 (11th Cir. 1985) (agreeing with the district court's finding that "there was no material issue of fact with respect to the agricultural purposes of the January 1983 loan.").

[10]    In his Memorandum Decision and Order of June 26, 2008, Chief Judge Mordue denied Defendant's motion for summary judgment, finding a question of fact regarding whether "the March 27, 2001 loan was used primarily for a business purpose." *Macheda v. Household Fin. Realty Corp. of New York*, 04-CV-0325, 2008 WL 2562003, at *4 (N.D.N.Y. June 26, 2008) (Mordue, C.J.).

[11]    Defendant, in its proposed jury instructions, asserts that "[t]he parties dispute[ ] whether this transaction was primarily for a personal purpose or primarily for a business purpose based on plaintiffs' admitted use of the Property for business purposes as well as for a residence.

Defendant should not, and will not, be precluded from offering evidence contradicting the evidence Plaintiff may offer in order to meet their burden of proof.

As a result, the Court denies Plaintiffs' motion.

**B.     Defendant's Motions *in Limine***

**1.     Whether Plaintiffs Should be Denied Their Demand for a Jury Trial**[12]

**a.     Background**

In support of its motion, Defendant asserts what is essentially a four-part argument: (1) under Fed. R. Civ. P. 38(b), a party may demand a jury trial only of issues "triable of right" by a jury; (2) an action asserting a claim for rescission of a contract, and a request for restitution damages as relief for such a claim, is traditionally triable by the court (since it is equitable in nature); (3) this rule governs even in cases asserting both equitable and legal claims, if the action is fundamentally or predominantly equitable in nature so as to render a request for legal relief incidental in nature; and (4) here, Plaintiffs' action is fundamentally or predominantly one for rescission of a contract, his request for actual and statutory damages being only incidental in nature.  (Dkt. No. 91, at 4-7 [Def.'s Memo. of Law].)

In response, Plaintiffs simply re-assert that they are entitled to a jury trial on the claims in

---

'Primarily' must mean that more than half the loan has a business or commercial purpose.  In making this determination, you may look to the borrower's treatment of the property purchased (or refinanced) with proceeds of the loan, including whether the borrower took depreciation and interest rate deductions on tax returns." (Dkt. No. 94, at 2.)  Plaintiffs, in their proposed verdict form, ask the jury to indicate "the purpose for which the 2001 Loan was extended to the Machedas." (Dkt. No. 84, at 1.)

[12]     Though characterized as a motion *in limine*, Defendant's motion to deny Plaintiffs' demand for a jury trial is more commonly, and perhaps more properly, characterized as a motion to strike Plaintiff's jury demand.

the amended complaint as stated in their initial Trial Brief.  (Dkt. No. 105, at 1.)

### b.    Governing Legal Standard

"Whether a party to a TILA action may demand a jury trial as a matter of right is an issue

that has been litigated only infrequently."  1-1 *Consumer Law Credit Manual* § 1.10[6] (Matthew

Bender 2004) [citations omitted].  The few dozen reported decisions that exist on the issue

appear to reach differing conclusions.  For example, some cases say that no TILA claims may be

tried by jury,[13] while others say that at least some TILA claims may be tried by jury.[14]  As a

---

[13]      *See, e.g., Maddox v. Kentucky Finance Co., Inc.*, 736 F.2d 380, 383 (6th Cir. 1984)
("TILA claims are heard by the court without a jury and ordinarily involve only questions of law
based on the face of the loan documents."); *Cabrera v. Courtesy Auto Sales, Inc.*, 192 F. Supp.
2d 1012, 1021 (D. Neb. Mar. 22, 2002) ("TILA claims are heard by the court without a jury and
ordinarily involve only questions of law based on the face of the loan documents. . . .  There
may, however, be a right to trial by jury on the issue of damages.") [citations omitted]; *Warren v.
GAC Fin. Corp.*, No. 17980, 4 Consumer Credit Guide (CCH) ¶ 98,968 (N.D. Ga. July 18, 1973)
(holding that there is no right to a jury trial in private actions brought under TILA); *compare
Diaz v. Paragon Motors of Woodside, Inc.*, 03-CV-6466, 2008 WL 2004001, at *1 (E.D.N.Y.
May 07, 2008) (indicating that district court decided–through bench trial–damages on plaintiff's
TILA claim, after liability was established through summary judgment motion) *with Diaz v.
Paragon Motors of Woodside, Inc.*, 03-CV-6466, Complaint, at 1, 6, 16 (E.D.N.Y. filed Dec. 29,
2003) (demanding jury trial, and requesting, as relief on TILA claim, "actual and statutory
damages"); *compare Krutchoff v. Fleet Bank, N.A.,* 960 F. Supp. 541, 543-44 (D. Conn. 1996)
(indicating that district court decided–through bench trial–plaintiff's claim under 15 U.S.C. §
1640, and indicating that plaintiff had sought, as relief on that claim, actual damages and
statutory damages) *with Krutchoff v. Fleet Bank, N.A.*, 93-CV-0119, Docket Sheet (D. Conn.
filed) (indicating that jury selection was cancelled after defendants filed a motion to strike
plaintiff's jury demand).

[14]      *See, e.g., Christ v. Beneficial Corp.*, 547 F.3d 1292, 1294, 1295-96 (11th Cir.
2008) (indicating that plaintiffs' requested damages on his TILA claims–which included actual
damages, statutory damages, a permanent injunction, a declaratory judgment, an accounting, and
disgorgement–were decided through bench trial); *Barber v. Kimbrell's, Inc. & Furniture
Distributors, Inc.*, 577 F.2d 216, 218, 222-26 (4th Cir. 1978) (finding that district court
improperly decided damages on TILA claims through bench trial, because [1] requested statutory
damages were legal in nature, and [2] issue of amount of statutory damages owed to class of
plaintiffs was factual issue); *Darling v. Indymac Bank, F.S.B.*, 06-CV-0123, 2007 WL 4276903,
at *4, n.3 (D. Me. Dec. 03, 2007) (indicating that liability and damages on plaintiff's TILA claim

result, it is appropriate to briefly review the sources of the right to a jury trial for a statutory cause of action in federal court.

"[T]here are two possible sources of a right of trial by jury for a statutory cause of action." *Kobs v. Arrow Service Bureau, Inc*., 134 F.3d 893, 896 (7th Cir. 1998); *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 832 (11th Cir. 1982) [citations omitted].  First, "Congress may provide for trial by jury in the statute that creates the claim regardless of whether the claim involves rights and remedies of the type traditionally enforced in a court of law before a jury." *Kobs*, 134 F.3d at 896; *Sibley*, 677 F.2d at 832 [citations omitted].  Second, "if the claim involves rights and remedies of the type traditionally enforced in an action at law [as opposed to in an action in equity], the Seventh Amendment requires that the right of jury trial be preserved." *Id*.  Here, the statutory language of TILA is inconclusive as to whether jury trials are prohibited in TILA actions.  15 U.S.C. § 1640; *see also Barber v. Kimbrell's, Inc. & Furniture Distributors, Inc.*, 577 F.2d 216, 224, n.23 (4th Cir. 1978) ("[W]e think that [TILA] and its legislative history are inconclusive with regard to the right to jury trial issue . . . ."); 1-1 *Consumer Law Credit Manual* § 1.10[6] (Matthew Bender 2004) ("TILA does not specify whether jury trials are available in TILA actions.") [citations omitted].

---

were decided through jury trial, and stating, "Because the Darlings' plea for relief requests more than equitable remedies, there is a legal component to their TILA claim that is properly submitted to a jury in light of their jury demand. . . ."); *In re McCormick*, 61 B.R. 595, 596 (Bankr. D. Nev. 1986) (granting request for jury trial on tort claims and claims under TILA, which sought "recision and damages"); *Mosley v. National Fin. Co.*, 440 F. Supp. 621, 622 (M.D.N.C. 1977) (holding that plaintiff had a right to jury trial under TILA for three reasons: [1] his claim–alleging a "fail[ure] to disclose . . . the amount of the finance charges, the annual percentage rate and other matters"–was more analogous to a tort claim than to an equitable claim, [2] as a remedy, plaintiff was seeking "a civil penalty," and [3] the court believed that "determination of the issues in this case would be within the practical capabilities of the jury").

13

"The question then is whether the Seventh Amendment to the Constitution mandates a jury trial." *Kobs*, 134 F.3d at 897 (addressing claim under Fair Debt Collection Practices Act); *accord*, *Barber*, 577 F.2d 216, 224, n.23 ("proceed[ing] to consideration of the constitutional basis of the claim [arising under FILA]").[15]  "This analysis involves a determination of [1] whether the rights under the statute are rights that would have been resolved historically at law by a jury or in equity by a judge and [2] whether the relief requested by the plaintiff is traditionally granted by a jury at law or by a judge in equity." *Kobs*, 134 F.3d at 897 [citations omitted].  As stated above, if the claim involves rights and remedies of the type traditionally enforced in an action at law (by a jury), then the Seventh Amendment requires that the right of jury trial be preserved.  *Id*. at 986; *Sibley*, 677 F.2d at 832 [citations omitted].  However, if the claim involves rights and remedies of the type traditionally enforced in a court of equity (by a judge), then the Seventh Amendment does not require that the right of jury trial be preserved. *Franklin v. Hartland Mortgage Ctrs., Inc.*, 01-CV-2041, 2001 U.S. Dist. LEXIS 24238, at *1 (N.D. Ill. June 18, 2001) (finding, in TILA case, that "[t]here is no right to a jury trial for suits arising in equity.").

"[W]here both legal and equitable issues are presented in a single case [and trial by jury is timely and properly demanded], only under the most imperative circumstances, . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962) [internal quotation marks and citation

---

[15]     The Seventh Amendment provides that "[i]n Suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." *Kobs*, 134 F.3d at 897 n.1.

omitted].[16]  "[This] rule applies whether the trial judge chooses to characterize the legal issues presented as 'incidental' to equitable issues or not."  *Dairy Queen, Inc.*, 369 U.S. at 473 [citation omitted].

Despite the Supreme Court's pronouncement in *Dairy Queen*, some contrary authority exists, suggesting that, when the equitable aspects of the claim predominate so as to render damages that are legal in nature incidental to the claim, the parties will not be entitled to a jury trial.  *See, e.g., In re Friedberg*, 131 B.R. 6, 10-12 (Bankr. S.D.N.Y. 1991) ("[T]he equitable aspects of the [TILA] claim clearly predominate, and thus in the Court's view this issue is equitable and does not entitle appellant to a jury."); *In re Spence*, 276 B.R. 149, 153-55 (Bankr. N.D. Miss. 2001) (bifurcating TILA trial into equitable issues tried first and legal issues tried second because, by requesting nine forms of relief in equity and only two forms or relief in law, complaint "largely [sought] equitable relief"); 9 Wright & Miller, *Federal Practice and Procedure*, § 2305, at 124, n.16 (3d ed. 2008) [citing five cases as contrary authority to rule that right to jury on legal issues cannot be defeated by characterizing them as "incidental" to equitable issues].[17]

---

[16]        *See also Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959) ("[O]nly under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.") [citation omitted]; 9 Wright & Miller, *Federal Practice and Procedure*, § 2305, at 122 & n.14 (3d ed. 2008) ("Under now familiar principles, if the case does present both legal and equitable issues, it is for the jury to decide the legal issues and the for the court to decide the equitable issues.") [collecting cases].

[17]        It is perhaps a reliance on these cases that explains why two courts appear to have decided a plaintiff's TILA claim without holding a jury trial even though (1) the plaintiff had requested a jury trial, and (2) plaintiff's complaint requested the legal remedies of "actual damages" and/or "statutory damages" along with the equitable remedy of rescission.  *Compare Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 762 (7th Cir. 2006) (indicating that district court

c.     **Discussion**

Based on the governing law and the circumstances of this case, the success of

Defendant's motion hinges on (1) the Court's acceptance of Defendant's argument that Plaintiffs'

action is fundamentally or predominantly one for rescission of a contract, his request for actual

and statutory damages being only incidental in nature, and (2) the Court's decision to follow the

contrary authority cited above at the end of Part II.B.1.b. of this Decision and Order.  (Dkt. No.

91, at 4-7 [Def.'s Memo. of Law].)

Taking the former issue first, the Court agrees with Defendant that Plaintiffs' action is

indeed fundamentally or predominantly one for rescission of a contract for four reasons.  First,

ten of the eleven forms of relief requested in Plaintiffs' Amended Complaint are equitable, and

not legal, in nature.  (Dkt. No. 8, at Prayer for Relief [Plf.'s Am. Compl.].)  Second, Plaintiffs'

Amended Complaint does not allege facts plausibly suggesting what these "actual damages" are.

(*See generally id.*)[18]  Third, to the extent that those "actual damages" consist of interest, points,

---

decided liability and damages on plaintiff's TILA claim through bench trial) *with Handy v.
Anchor Mortg. Corp.*, 02-CV-1401, Complaint, at 5, 6 (N.D. Ill. filed Feb. 26, 2002) (demanding
jury trial, and requesting as relief on TILA claim "[r]escission of plaintiff's loan," "[s]tatutory
damages," "[a]ttorney's fees, ligation expenses and costs," and "[s]uch other or further relief as
the Court deems appropriate") *and Handy v. Anchor Mortg. Corp.*, 02-CV-1401, Parties' Initial
Status Report, at 1 (N.D. Ill. filed July 26, 2002) (characterizing complaint as seeking "actual
damages"); *compare Clay v. Johnson*, 77 F. Supp.2d 879, 881 (N.D. Ill. 1999) (indicating that
district court decided damages–including requests for rescission, statutory damages and
attorney's fees–on plaintiff's TILA claim through bench trial, after liability was established
through summary judgment motion), *rev'd on other grounds*, 264 F.3d 744 (7th Cir. 2001) *with
Clay v. Johnson*, 97-CV-6007, Docket Sheet (N.D. Ill.) (indicating that both sides demanded jury
trial). Of course, it is unclear whether these two cases involved pre-trial withdrawals of a jury
demand that are not reflected on the cases' docket sheets.

[18]     Based on a review of the relevant case law, the Court notes that some examples of
actual damages in TILA cases appear to include the following: (1) payment of a fee to a lender
as a result of an improper disclosure, which the plaintiff would not have paid had she known the

fees, and charges, those damages would appear to be duplicative of the relief awarded by the

Court if it awarded Plaintiff the remedy of rescission.  Fourth, to the extent that those "actual

damages" flow from Plaintiffs' failure-to-disclose claim,[19] those damages appear (at this stage of

the action) not to be recoverable since his failure-to-disclose claim appears to be precluded by

the one-year limitations period governing such claims.

Having said that, the Court finds it difficult to follow the contrary authority cited by

Defendant above at the end of Part II.B.1.b. of this Decision and Order (in order to conclude that,

if an action is fundamentally or predominantly equitable in nature so as to render a request for

legal relief incidental in nature, then the parties are not entitled to a jury trial) for four reasons.

First, the cases fly in the face of the Supreme Court's pronouncement in *Dairy Queen* that the

right to a jury on the legal issues cannot be defeated by a trial judge's characterization of those

issues as "incidental" to the equitable issues.  *Dairy Queen, Inc.*, 369 U.S. at 473 [citation

omitted].[20]  Second, the rule set forth in *Dairy Queen* appears to have been consistently followed

----

truth; (2) attorney's fees incurred as a result of the defendant's violation of TILA are actual
damages; (3) the difference between the interest rate that the plaintiff paid the defendant and the
more favorable interest rate that the plaintiff would have obtained but for the violation; (4) the
"better deal" that the plaintiff lost out on as a result of the lender's improper disclosures; (5)
consequential damages; or (6) the "excess interest" that the plaintiff was charged in violation of
TILA.  Actual damages do not appear to include "forfeiture of the borrower's repayment or
tender obligation."  *In re Bilal*, 296 B.R. 828, 839 (Bankr. D. Kan. 2003) [citation omitted].

[19]     Actual damages are only available for a violation of TILA disclosure
requirements if the borrower actually relied to his detriment on the allegedly incomplete or
inaccurate disclosures.  *Schuster v. Citibank (South Dakota), N.A.*, 00-CV-5940, 2002 WL
31654984, at *3 (S.D.N.Y. Nov. 21, 2002) [collecting cases].

[20]     *Cf. Crane Co. v. Am. Standard, Inc.*, 326 F. Supp. 766, 773 (S.D.N.Y. 1971)
(criticizing the defendant's argument as resulting from "a blithe ignorance of *Dairy Queen* and
*Beacon Theatres*"), *rev'd in part on other grounds*, 490 F.2d 332 (2d Cir. 1973).

by the Supreme Court,[21] most federal court cases from within the Second Circuit,[22] and most

federal court cases from outside of the Second Circuit.[23]  Third, the Court has found a well-

reasoned district court case denying a motion to strike a jury demand in a TILA case merely

because the plaintiff requested "statutory damages," which Plaintiff has done here (in addition to

requesting "actual damages").  (Dkt. No. 8, ¶¶ 59, 60, 62, & Prayer for Relief "g" [Plf.'s Am.

---

[21]     *See Tull v. U.S.*, 481 U.S. 412, 425 (1987) ("The right [to a jury trial] cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought.") [citation omitted]; *Curtis v. Loether*, 415 U.S. 189, 196, n.11 (1974) ("The right [to a jury trial] cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought.") [citations omitted].

[22]     *See, e.g., Robine v. Ryan*, 310 F.2d 797, 798 (2d Cir. 1962) ("The Supreme Court's decision in *Dairy Queen*, . . . makes plain that the right to a jury trial of a legal cause of action is not lost by joinder with an equitable claim except in extraordinary circumstances. . . . This is true even if the cause of action at law is thought to be 'incidental' to another cause of action in equity or if the plaintiff could have proceeded entirely in equity.") [citation omitted]; *Davilla v. New York Hosp.*, 91-CV-5992, 1995 WL 115598, at *2 (S.D.N.Y. March 17, 1995) ("Nor does plaintiff lose his right to a jury trial because his claim for damages for mental distress is merely 'incidental' to his claims seeking equitable relief, as defendant argues.") [citations omitted], *Reliability Research Inc. v. Computer Assoc. Int'l, Inc.*, 851 F. Supp. 58, 60 (E.D.N.Y. 1993) ("[T]he weight of authority holds that the right to a jury trial cannot be defeated by characterizing legal claims as incidental to equitable claims.") [collecting cases]; *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 882, 887 (S.D.N.Y. 1990) ("The right to a jury trial is not lost where legal and equitable issues are presented in a single case or where legal issues are only 'incidental' to equitable issues.") [citation omitted]; *Caputo v. National Ass'n of Letter Carriers*, 730 F. Supp. 1221, 1236 n.11 (E.D.N.Y. 1990) ("The right to a jury of the legal issues cannot be defeated by characterizing them as 'incidental' to the equitable issues.") [internal quotation marks and citation omitted]; *Prudential Oil Corp. v. Phillips Petroleum Co.*, 392 F. Supp. 1018, 1022 (S.D.N.Y. 1975) ("[T]he Supreme Court has consistently held that where both legal and equitable issues are presented in the same case, and even where the legal issues are considered as 'incidental' to the equitable issues, if the demand for a jury is timely and properly made it is to be upheld.") [citation omitted].

[23]     *See* 9 Wright & Miller, *Federal Practice and Procedure*, § 2305, at 122-24 & nn.15-16 (3d ed. 2008) ("The right to a jury on the legal issues cannot be defeated by characterizing them as 'incidental' to the equitable issues.  Even if a stronger basis is presented for equitable than for legal relief, the right to a jury on the legal issues is preserved.") [collecting cases].

Compl.].)[24]

For all of these reasons, the Court finds that the crux of the issue before it is whether or not Plaintiffs' Second Amended Complaint asserts any claims that involve rights and remedies of the type traditionally enforced in an action at law (by a jury).  After carefully reviewing Plaintiffs' Second Amended Complaint, the Court concludes that it does assert at least some claims that involve rights and remedies of the type traditionally enforced in an action at law (by a jury)–specifically, Plaintiffs' TILA claim requesting as relief (1) "[s]tatutory damages" and (2) "[a]ctual damages."  (Dkt. No. 8, at Prayer for Relief [Plf.'s Am. Compl.].)

As a result, the Court denies Defendant's motion.[25]

---

[24]      *Compare Franklin v. Hartland Mortgage Ctrs., Inc.*, 01-CV-2041, 2001 U.S. Dist. LEXIS 24238, at *1-2 (N.D. Ill. June 18, 2001) (denying motion to strike jury demand in TILA action, because plaintiff did not request only rescission of the mortgage loan but also statutory damages under TILA, which "are considered legal remedies because they are akin to punitive damages, a type of relief traditionally granted by courts of law") *with Franklin v. Hartland Mortgage Ctrs., Inc.*, 01-CV-2041, Complaint, at 10 (N.D. Ill. filed Feb. 22, 2001) (as relief on TILA claims, requesting "[r]ecission," "[s]tatutory damages," "[a]ttorney's fees, litigation expenses and costs, and "[s]uch other or further relief as the Court deems appropriate").

[25]      The Court notes that, in determining whether the Seventh Amendment mandates a jury trial, some cases consider not simply whether (1) the rights under the statute are rights that would have been resolved historically at law, and (2) whether the relief requested by the plaintiff is traditionally granted by a jury at law or by a judge in equity, but also (3) whether the litigation is so complex that it is beyond the competence of the jury.  *See, e.g.*, *In re Friedberg*, 131 B.R. at 10 ("In determing whether an action is 'legal' or 'equitable' for Seventh Amendment purposes, a court must consider . . . the practical abilities and limitations of juries.") [citation omitted]. However, Defendant has not made that argument.  (Dkt. No. 91, at 4-7 [Def.'s Memo. of Law].) In any event, the historical roots, and general acceptance, of this complexity factor are matters of some doubt.  9 Wright & Miller, *Federal Practice and Procedure*, § 2302.1, at 45-50 (3d ed. 2008).

    **2.**    **Whether Plaintiffs Should Be Precluded from Denying that They Did Not Owe Robert Riedl the Second Payment Amount of $20,122.39, Which Defendant Paid Riedl After Making the Loan to Plaintiffs**

Defendant argues that Plaintiffs should be precluded from testifying or offering evidence at trial that disputes (1) the fact that Defendant made a second payment to Robert Riedl subsequent to the March 27, 2001, transaction in order to pay off a lien that Mr. Riedl had on Plaintiffs' property at the time of the March 27, 2001, transaction, and (2) the fact that Plaintiffs did not owe the second amount to Mr. Riedl.  (Dkt. No. 91, at 7.)[26]  In support of its position, Defendant points to Plaintiffs' Amended Complaint, which alleges that, although "[i]t was the Plaintiffs understanding that th[e] loan [they received from Defendant] would pay off their existing indebtedness to Robert Riedl and the Defendant[,] . . . Household did not pay off [their] total indebtedness to . . . Riedl."  (Dkt. No. 8, ¶ 19 [Plf.'s Am. Compl.].)  Defendant argues that because this statement is provided in a pleading, Plaintiffs "cannot now be heard to protest that they did not owe the amount of the second payment to Mr. Riedl." (Dkt. No. 91, at 8.)  Furthermore, Defendant reasons that, because Plaintiffs should be precluded from disputing that they owed Mr. Riedl the $20,122.39 amount that Defendant paid him, this amount should be included in the "total loan amount" calculation.  (*Id.*)  In the alternative, Defendant argues that the $20,122.39 amount should be included in the amount that Plaintiffs must tender back to Defendant should the Court determine that Plaintiffs are entitled to rescission of the loan agreement.  (*Id.*)

---

[26]    In their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Plaintiffs argue that they "did not owe" Mr. Riedl the sum of $20,122.39 that Defendant paid him "because Mr. Macheda had performed work for Mr. Riedl as payment towards this sum."  (Dkt. No. 54, at 22 [Plf.'s Memo. of Law in Opp. to Def.'s Motion for Summ. Judg.].)

In response, Plaintiffs argue that "there is no logical or legal basis for including the subsequent payment to Robert Riedl in the total loan amount of the loan transaction with the Plaintiffs."[27]  (Dkt. No. 105, at 1-2.)  This is because, argue Plaintiffs, even assuming that the Defendant could add the $20,122.39 amount to the "total loan amount" of the loan transaction with Plaintiffs, then the principal amount of the loan would change and the documents given to Plaintiffs on March 27, 2001, would be inaccurate.  (*Id.*)

Plaintiffs' Amended Complaint alleges that, contrary to Plaintiff's understanding on March 27, 2001, the loan made by Defendant to Plaintiff at that time did not in fact pay off their total indebtedness to Mr. Riedl.  (Dkt. No. 8, Part 1, ¶ 19 [Plf.'s Am. Compl.].)[28]  In their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, Plaintiffs argue that they "did not owe" Mr. Riedl the sum of $20,122.39 that Defendant paid him "because Mr. Macheda had performed work for Mr. Riedl as payment *towards* this sum."  (Dkt. No. 54, at 17 [Plf.'s Memo. of Law in Opp. to Def.'s Motion for Summ. Judg.] [emphasis added].)

The Court agrees with Defendant that Plaintiffs should be precluded from introducing evidence at trial that controverts Plaintiffs' own Amended Complaint.  *See Guadagno v. Wallack Ader Levithan Associates*, 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997) [citation omitted]; *see also American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988) (noting that

---

[27]     The Court notes again that all issues with regard to the "total loan calculation" will be decided at trial.

[28]     It should be noted that, when Plaintiffs entered into the loan agreement with Defendant on March 27, 2001, one of the documents they signed stated that they "granted a 1st position lien to [Defendant] on [their] real property . . . located at [Plaintiffs' current home address]."  (Dkt. No. 45, Part 15, at 14 [Exh. H to Zarlock Affid., in Support of Def.'s Motion for Summ. Judg.].)

"[f]actual assertions in pleadings . . . are considered judicial admissions [that] conclusively bind[
] the party who made them[]" unless "courts [exercise] discretion not to apply the doctrine in
particular cases.")[29]  However, the Court finds little if any inconsistency with the above two
statements.  For example, both statements are consistent with the possibility that, during the two
years between the loan transaction and the payment, Plaintiffs performed work for Mr. Riedl that
effectively reduced or eliminated the debt.

As a result, the Court denies in part, and grants in part, Defendant's motion: Plaintiffs are
precluded only from offering evidence or argument that they did not owe Mr. Riedl anything
more than the $62,829 amount at the time of the transaction on March 27, 2001.[30]

### 3.	Whether Plaintiffs Should Be Precluded from Raising Claims of Representations Contrary to the Terms of the Loan Documents Under the Parol Evidence Rule

In support of its motion, Defendant argues that the parol evidence rule precludes
Plaintiffs from introducing evidence that "there were prior or contemporaneous representations
contrary to the express terms of [the loan documents signed on March 27, 2001]."  (Dkt. No. 91,
at 9.)  Specifically, Defendant asserts that (1) "[P]laintiffs [sic] claims that their purchase of

---

[29]	*See New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (several factors typically
inform the decision whether to apply the doctrine of judicial estoppel in a particular case:
whether the party's later position is "clearly inconsistent" with its earlier position, whether the
party has succeeded in persuading a court to accept that party's earlier position, so that judicial
acceptance of an inconsistent position in a later proceeding would create the perception that
either the first or second court was misled, and whether the party seeking to assert an
inconsistent position would derive an unfair advantage or impose an unfair detriment on the
opposing party if not estopped).

[30]	The Court in no way suggests that Defendant may not challenge the accuracy of
the two referenced statements, and/or point out any inconsistencies in them that Defendant
believes exist.

22

credit insurance was not voluntary despite the terms of the agreements they signed is [sic] barred"; and (2) "any claims of representations contrary to other loan documents are also barred."  (Dkt. No. 91, at 13-14.)

In response, Plaintiffs argue that "Defendant ignores the authority provided by the Official Staff Commentary [provided by the Federal Reserve Board]," which indicates that "voluntariness is a factual issue, ascertainable only 'by reference to all of the circumstances of a particular transaction.  Inquiry into these circumstances is, of course, not foreclosed by the presence of a customer's signature in an insurance authorization.'"  (Dkt. No. 105, at 2.) Plaintiffs further argue that "the parole evidence rule has no applicability at all to the TIL credit insurance voluntariness issue, for here the consumer is not trying to alter the written terms of a contract, i.e., is not challenging the contractual obligation to pay the insurance premium."  (*Id*. at 3.)  In addition, Plaintiffs argue that they "have raised herein evidence of fraud and duress with respect to the credit insurance premiums."  (*Id*.)

Some courts have held that, in a TILA action (specifically during the voluntary acceptance of credit insurance), the parol evidence rule bars the introduction of oral representations made prior to or contemporaneously with the execution of a loan agreement.[31] These decisions would seem to be at odds with the Federal Reserve Board's "Official Staff

---

[31]     *See, e.g. Anthony v. Cmty. Loan and Inv. Corp*., 559 F.2d 1363, 1369-70 (5th Cir.1977) ("absent a claim of illiteracy, fraud or duress, no extraneous oral evidence can be presented by the plaintiff to prove that the defendant gave her the impression that insurance was required."); *accord Kramer v. Marine Midland Bank*, 559 F. Supp. 273, 284 (S.D.N.Y. 1983); *Dixon v. S & S Loan Service of Waycross, Inc*., 754 F .Supp. 1567, 1571 (S.D. Ga.,1990) (to admit parol evidence, borrower must allege that execution of loan agreement "resulted from illiteracy, fraud or duress").

Commentary,"[32] which states that "'whether the [credit] insurance is in fact required or optional is a factual question.'" *In re Cruz*, 03-BK-17888, 2004 Bankr. LEXIS 2366, at *20 (Bankr. E.D. Pa. Nov. 1, 2004) (citing 12 C.F.R. Pt. 226, Supp.I.).  In addition, "[i]nquiry into the[] circumstances [in which the loan arose from are], of course, not foreclosed by the presence of a customer's signature on an insurance authorization." *Id.* (citing Federal Reserve Board Staff Letter of Dec. 20, 1977, No. 1270, Consumer Credit Guide (CCH) fl 31,756).

Having said that, this Court need not decide whatever inconsistencies exist between the Federal Reserve Board and relevant caselaw.  This is because "[t]he parol evidence rule does not apply [when the plaintiffs] are not trying to prove that the [defendant's] mortgage is not binding as written or that there was some preexisting agreement with [Defendant] that modifies the terms of the mortgage they entered into." *Darling v. Indymac Bancorp*, *Inc*., 06-CV-0123, 2008 WL 3539518, at *10 (D.Me. Aug. 12, 2008) [citation omitted]; *see also Manufacturers Hanover Trust v. Yanakas*, 7 F.3d 310, 315 (2d Cir.1993) ("[P]arol evidence that a party was induced to enter the contract by means of fraud . . . [is admissible].").[33]

In their Amended Complaint, Plaintiffs allege that "[w]hen the Plaintiffs expressed concern about the interest rate, the account executive advised the Plaintiffs that since they

---

[32]     "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth in lending law." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

[33]     In addition, of course, "[p]arol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous." *Monaco v. Bear Stearns Residential Mortg. Corp*., 554 F.Supp.2d 1034, 1041 n.10 (C.D.Cal. 2008) (citation omitted); *see also In re Streeter*, 02-BK-15923, 2002 WL 32114477, at *3 (Bankr. E.D.Ark. Oct. 28, 2002) (parol evidence is admissible to determine "the parties' intent in executing the written documents").

24

operated a childcare facility in their home nobody else would give them a loan." (Dkt. No. 8, Part 1, ¶ 17 [Plf.'s Am. Compl.].)  In addition, the Amended Complaint asserts Defendant "[m]isrepresenting" four facts (including the credit life insurance and credit disability insurance), thereby inducing and encouraging Plaintiffs to enter the loan agreement.  (Dkt. No. 8, Part 1, ¶¶ 65(d), (i), (j), (k) [Plf.'s Am. Compl.].)  The Court finds that these allegations are not being asserted to contradict any of the terms of the loan agreement, but rather serve as an explanation of why the agreement was signed.  While the probative value of this evidence may be somewhat low for purposes of Fed. R. Evid. 403, so is any danger of unfair prejudice, confusion of the issues or misleading the jury.

As a result, the Court denies Defendant's motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion to exclude evidence regarding the $20,122.39 Defendant paid to Robert Riedl two years after the loan transaction (Dkt. No. 82) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiffs' motion to preclude Defendant from introducing at trial any discussion, argument, testimony and/or evidence regarding Defendant's contention that it made an error on its forms regarding payment to IRES for title fees (Dkt. No. 82) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiffs' motion to preclude Defendant from introducing at trial any discussion, argument, testimony and/or evidence regarding Plaintiffs' tax forms and the contention that Plaintiffs secured their loan from Defendant for primarily business purposes (Dkt. No. 82) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion to deny Plaintiffs' demand for a jury trial (Dkt. No. 91) is **DENIED**; and it is further

**ORDERED** that Defendant's motion to preclude Plaintiffs from introducing at trial any discussion, argument, testimony and/or evidence denying that they did not owe Robert Riedl the second payment amount of $20,122.39, which Defendant paid Robert Riedl subsequent to making the March 27, 2001 loan to Plaintiffs (Dkt. No. 91) is **DENIED** in part and **GRANTED** in part, in that Plaintiffs are precluded only from offering evidence or argument that they did not owe Mr. Riedl anything more than the $62,829 amount; and it is further

**ORDERED** that Defendant's motion to preclude Plaintiff from raising claims of representations contrary to the terms of the loan documents given the parol evidence rule (Dkt. No. 91) is **DENIED**.

Dated: January 15, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge